IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MARY GOODE,

    Plaintiff,

vs.

ST. JUDE MEDICAL, TWEED HANUSEK, BILL HILTON, ST. JUDE MEDICAL CARDIAC, RUTH GAGARIN, IRMA ESTRADA, BRIDGET FELLOWS, NICOLE ARANA, NES KUSNIERZ, KATHY CHESTER, ST JUDE MEDICAL CARDIAC RHYTHM MANAGEMENT and DOES 1-20,

    Defendants.
_____/

No. CIV S-08-0302 MCE EFB PS

FINDINGS AND RECOMMENDATIONS

    Presently pending before this court are defendants' motions to dismiss plaintiff's Amended Complaint. For the reasons that follow, this court recommends that defendants' motions be granted in part, and denied in part, and that plaintiff be granted leave to file a Second Amended Complaint.

BACKGROUND

    Plaintiff timely filed her Amended Complaint on May 1, 2008, Dckt. No. 4, after this court granted plaintiff's request to proceed *in forma pauperis* and dismissed her initial complaint with leave to amend, Dckt. No. 3. Defendants' motions to dismiss were submitted for decision

1

on the papers on February 25, 2009, Dckt. No. 21, following plaintiff's response to this court's order to show cause.[1]

The Amended Complaint avers that plaintiff is an African-American woman, over forty years of age. Amended Complaint ("Am. Compl."), at 5, 8. She was hired by defendant St. Jude Medical on March 31, 2003, and terminated on August 28 or 29, 2006. Am. Compl., at 5. She allegedly was "the only African American in her work area." *Id*. at 8. Her complaint consists of a variety of loosely connected allegations against serval persons. Plaintiff sues defendants "St Jude Medical, St Jude Medical Cardiac Rhythm Management of Santa Clara California, a private corporation located in the County of Santa Clara, and Orange County, State of California, [and] St Jude Medical World Headquarters of St Paul, MN." *Id*. at 3-4.[2] Plaintiff also sues several individual defendants, which appear to have held the following positions and allegedly engaged in the following conduct: (1) Tweed Hanusek, plaintiff's new supervisor hired January 20, 2006, alleged to have discriminated against plaintiff, and created and maintained a hostile work environment, by denying plaintiff promotions and/or raises, isolating her by taking plaintiff's non-African-American female coworkers to lunch who then aligned themselves against plaintiff, refusing to tell plaintiff about important meetings, denying plaintiff training opportunities,

---

[1] The motions to dismiss were filed on October 15, 2008. Dckt. Nos. 8, 9. Plaintiff failed timely to oppose the motions and the court issued an order to show cause. Dckt. No. 14. Plaintiff failed to respond to the court's order, and the undersigned issued findings and recommendations recommending that this action be dismissed for failure to prosecute. Dckt. No. 16. Plaintiff thereafter responded to the court's order and findings and recommendations, Dckt. No. 15, and the court vacated its recommendation and reset the motions for hearing, Dckt. No. 18. The motions were submitted for decision on the papers on February 25, 2009. Dckt. No. 21. The court construes plaintiff's "letter" filed February 9, 2009, Dckt. No. 19, as her timely-filed opposition.

[2] The original complaint stated that defendants are located in San Joaquin, rather than Santa Clara, County. Plaintiff currently resides in Tracy, which is in San Joaquin County, which is within this judicial district. *See* E. D. Cal. L. R. 3-120 (d). The business status, locations, and participation of the institutional defendants remain unclear. Nor does the Amended Complaint identify plaintiff's job location. While defendants' answer challenges the venue of this action in this court, *see* Answer to Am. Compl., Dckt. No. 7, ¶ 3, their motions to dismiss do not. These matters must be clarified in plaintiff's Second Amended Complaint.

refusing work plaintiff prepared at Hanusek's request, and terminating plaintiff in retaliation for complaining; (2) fellow employees Ruth Gagarin, Irma Estrada, Bridget Fellows, whose work was allegedly no better nor worse that plaintiff's; (3) intermediate supervisors Kathy Chester and Nes Kusnierz ("Director of the Department"),"who signed the letter of termination based on what Tweed Hanusek said," despite their earlier agreement that plaintiff be promoted; (4) Nicole Arana, plaintiff's replacement, "a less qualified person (non-African American) . . . a white female, approximately 26 to 28 years old, who had to be trained, was hired for the position and according to management none of the African American employees or applicants met the performance expectations and they were all terminated," and who allegedly conspired with Hanusek, Gagarin, Estrada, and Fellows, to terminate plaintiff;  and (5) Bill Hilton, Human Relations Manager.  Am. Compl. at 4-8.

As set forth in the Amended Complaint, plaintiff received favorable performance evaluations for "years," when her immediate supervisor, "Mary,"[3] submitted the necessary paperwork to promote plaintiff (apparently from "Data Entry Clerk" to "Coordinator 4") and/or to give her a raise (from $19.29 an hour to "more than $20.00 an hour"), and so informed Bill Hilton (Human Resources).  Am. Compl. at 5, 6, 8.  Mary thereafter took an extended sick leave, and Tweed Hanusek was hired to replace Mary in January 2006.  *Id*., 6-7, 8.  "Within four months, plaintiff went from [being considered] a competent, about to be promoted employee, to a 'problem employee' according to her new supervisor." *Id.* at 7.  "Plaintiff's promotion was cancelled with no formal announcement or notification to her," and only after plaintiff made repeated inquiries.  *Id*.  The Amended Complaint also alleges that plaintiff was discriminated against by being offered a disparate "severance offer/agreement not to sue" package (for $10,000), far less than that accorded Ms. Laura Miller, who quit working for defendant three weeks before her entire department was laid off but received severance pay of $50,000.  *Id.* at

---

[3] It is unclear whether "Mary" is also known as "Ms. Andrews." *See, e.g.*, Am. Compl. at ¶ 25.

3

10.

Finally, the Amended Complaint provides that "[t]he Department of Fair Employment and Housing [] conducted an investigation of the defendant and their employees and arrived at the conclusion that the defendants did in fact discriminate against plaintiff." Am. Compl. at 6.

The Amended Complaint alleges generally that defendants failed to promote plaintiff, harassed and terminated her, based on race, sex and age discrimination, and that Hanusek's assertion that plaintiff failed to meet performance standards was merely pretextual. *Id*. at 4, 5. Plaintiff seeks $1 million damages "for each count," $3 million punitive damages, fees and costs.

LEGAL STANDARDS

On a motion to dismiss, the court construes the pleading in the light most favorable to plaintiff and resolves all doubts in plaintiff's favor. *Parks School of Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). The complaint's factual allegations are accepted as true. *Church of Scientology of California v. Flynn*, 744 F.2d 694 (9th Cir. 1984). The court may, without converting a motion to dismiss into a motion for summary judgment, consider facts established by exhibits attached to the complaint. *Durning v. First Boston Corp*., 815 F.2d 1265, 1267 (9th Cir. 1987); *United States v. Ritchie*, 342 F. 3d 903, 907-908 (9th Cir. 2003). The court may also consider facts which may be judicially noticed, *Mullis v. U.S. Bankruptcy Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987); and matters of public record, including pleadings, orders, and other papers filed with the court, *Mack v. South Bay Beer Distributors*, 798 F.2d 1279, 1282 (9th Cir. 1986).

To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must contain more than a "formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1965 (2007). "'The pleading must contain something more than a statement of facts that merely creates a suspicion of a legally cognizable right of action.'" *Id.* (quoting 5 C. Wright & A. Miller, *Federal Practice and*

4

1  *Procedure* § 1216, pp. 235-236 (3d ed. 2004) (internal punctuation omitted)).  Rather, a
2  complaint must plead  "enough facts to state a claim to relief that is plausible on its face."
3  *Weber v. Department of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008) (quoting *Bell*, at
4  127 S. Ct. at 1974).  Factually unsupported claims framed as legal conclusions, and mere
5  recitations of the legal elements of a claim, do not give rise to a cognizable claim for relief.  *See*
6  *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1951 (May 18, 2009) (citing *Twombly*, 550 U.S.
7  at 555).

8  The court is mindful of plaintiff's *pro se* status.  *Pro se* pleadings are held to a less
9  stringent standard than those drafted by lawyers.  *Haines v. Kerner*, 404 U.S. 519, 520-21
10 (1972).  Unless it is clear that no amendment can cure its defects, a *pro se* litigant is entitled to
11 notice and an opportunity to amend the complaint before dismissal.  *Lopez v. Smith*, 203 F.3d
12 1122, 1127-28 (9th Cir. 2000) (en banc); *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987).
13 However, although the court has an obligation to construe the pleadings of a *pro se* litigant
14 liberally, *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc), the court's liberal
15 interpretation of a *pro se* complaint may not supply essential elements of a claim that are not
16 plead.  *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992); *Ivey v. Bd. of Regents of Univ. of*
17 *Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).  Furthermore, "[t]he court is not required to accept
18 legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be
19 drawn from the facts alleged."  *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir.
20 1994).  Neither need the court accept unreasonable inferences, or unwarranted deductions of fact.
21 *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

22 DISCUSSION

23 Defendants argue that the Amended Complaint fails to comply with the court's
24 instructions and Fed. R. Civ. P. 8(a), that plaintiff set forth in any amended pleading factual
25 allegations establishing the elements of each claim, and further fails to allege exhaustion of
26 administrative remedies.  As to some of her claims and as to the requirement of exhaustion these

5

arguments have merit and the amended complaint must be dismissed. However, the pleading as a whole demonstrates that plaintiff might be able to state claims under 42 U.S.C. § 1981, Title VII, the Age Discrimination in Employment Act, and FEHA. For these reasons, it is necessary to grant plaintiff leave to again amend her complaint to attempt to properly assert these claims.

### A. PLAINTIFF DOES NOT STATE A CLAIM UNDER 42 U.S.C.§§1983, 1985, 1986

As previously determined by this court, plaintiff cannot state a claim under 42 U.S.C. §§ 1983, 1985, or 1986. Dckt. No. 3, at 3-4.

Plaintiff's claims under the 42 U.S.C. § 1983, are not cognizable, because application of this provision is premised on an allegation that defendants acted under color of state law,[4] and all of the defendants in this case are private parties or entities. *See* Defs.' Mots. to Dism., Dckt. No. 8, at 17; and Dckt. No. 9, at 18. Thus, plaintiff may not state a claim pursuant to Section 1983.

While plaintiff's claim pursuant to 42 U.S.C. § 1985(3),[5] based on a clarified allegation of conspiracy among defendants to deprive plaintiff, based on her race, of civil rights, comes generally within an exception for requiring state action, *see Griffin v. Breckenridge,* 403 U.S. 88, 101-102 (1971), the Court has held that "deprivation of a right created by Title VII cannot be the basis for a cause of action under § 1985(3)." *Great American Federal Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 378 (1979). Accordingly, plaintiff's allegation that defendants conspired to deprive her of equal employment rights, does not state a claim pursuant to Section 1985(3), as

---

[4] In order to state a claim under 42 U.S.C. § 1983, the complaint must allege that (1) the conduct complained of was committed by a person acting under color of state law, and (2) such conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds, Daniels v. Williams,* 474 U.S. 327 (1986). "To constitute state action, the deprivation must be caused by the exercise of some right or privilege created by the State or by a person for whom the State is responsible, and the party charged with the deprivation must be a person who may fairly be said to be a state actor." *West v. Atkins,* 487 U.S. 42, 49 (citations and internal quotations and punctuation omitted).

[5] Although plaintiff makes her claim generally pursuant to 42 U.S.C. § 1985, the applicable subsection is (3). *See* 42 U.S.C. § 1985 (subsection one prohibits conspiracies to prevent an officer from performing his duties; subsection two prohibits conspiracies to obstruct justice in a court of law).

it is preempted by Title VII.

Further, there is no cause of action under 42 U.S.C. § 1986 absent a valid claim for relief under § 1985. *Trerice v. Pedersen*, 769 F.2d 1398, 1403 (9th Cir. 1985). Plaintiff therefore fails to state a claim pursuant to Section 1986.

B. <u>LEAVE TO AMEND AS TO 42 U.S.C. § 1981</u>

Title 42, Section 1981, gives "[a]ll persons . . . the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). "[T]he term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits and privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b) (Civil Rights Act of 1991, Pub.L. No. 102-166, 105 Stat. 1071, 1072)).[6] The statute bars both employment discrimination and retaliation, *CBOCS West, Inc. v. Humphries*,__ U.S. __, 128 S.Ct. 1951 (May 27, 2008). The Supreme Court has acknowledged the "overlap" between § 1981 and Title VII, and found that it "reflects congressional design." *Id.* at 1960. Unlike Title VII, Section 1981 has no administrative exhaustion requirement. *Surrell v. California Water Service Co.*, 518 F.3d 1097, 1103 (9th Cir. 2008)).

"Section 1981 forbids all racial discrimination in the making of both public and private contracts. *Saint Francis College v. Al-Khazraji*, 481 U.S. 604 [] (1987). A claim under section 1981 is sufficient to withstand a motion to dismiss if it alleges that plaintiff suffered discrimination in employment on the basis of race. *Jones v. Bechtel*, 788 F.2d 571, 574 (9th Cir.

---

[6] Section (b) was added to the Act in response to the Supreme Court's construction of section (a) as applying only to conduct at the formation and legal enforcement stages of an employment contract, as set forth in *Patterson v. McLean Credit Union*, 491 U.S. 164, 181-182 (1989). Prior to amendment of the statute, the Ninth Circuit adopted this construction in *Courtney v. Canyon Television & Appliance Rental, Inc.*, 899 F.2d 845, 849 (9th Cir. 1990) ("Thus, in the employment context, refusal to hire an employee on the basis of race is actionable under section 1981, whereas subsequent harassment or maltreatment of an employee on account of race is not."). *See also, Sanders v. Culinary Workers Union Local No. 226*, 804 F. Supp. 86, 96, n. 8 (D. Nev. 1992). This court has not found a subsequent Ninth Circuit case directly reconsidering this pre-1991 limitation.

7

1986))." *Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 625 -626 (9th Cir. 1988). Plaintiff's complaint makes this allegation, although not precisely in tandem with her citations to section 1981, *see, e.g.,* Am. Compl., at 1, 2, 12.  Her complaint, as currently drafted does not satisfy *Twombly*, 550 U.S. at 555, and must be amended.  This court may not supply the required factual allegations for her.  According, this claim must be dismissed with leave to amend.

### C. LEAVE TO AMEND THE TITLE VII AND FEHA CLAIMS

#### 1. EXHAUSTION OF ADMINISTRATIVE PROCEDURES

"A person seeking relief under Title VII must first file a charge with the EEOC [or comparable state commission] within 180 days of the alleged unlawful employment practice, or, if, as here, the person initially instituted proceedings with the state or local administrative agency, within 300 days of the alleged unlawful employment practice.  42 U.S.C. § 2000e-5(e)(1).  If the EEOC [or state commission] does not bring suit based on the charge, the [agency] must 'notify the person aggrieved' that she can file suit.  *Id.* § 2000e-5(f)(1).  The notice is accomplished through a right-to-sue letter.  Once a person receives [a] [] right-to-sue letter, she has 90 days to file suit.  *Id.* § 2000e-5(f)(1)." *Surrell v. Cal. Water Svcs. Co.*, 518 F.3d 1097, 1104 (9th Cir. 2008).  A charge filed with the state employment department (here, the California Department of Fair Employment and Housing ("DFEH")), is deemed filed with the EEOC for purposes of a Title VII claim.  *Id.* (citing *Green v. Los Angeles County Superintendent of Schools*, 883 F.2d 1472, 1476 (9th Cir. 1989)).

Like a Title VII/EEOC claim, "FEHA provides an administrative scheme to process claims of employment . . . discrimination.  The statute creates two administrative bodies – the Department of Fair Employment and Housing, Cal. Gov't Code § 12901, and the Fair Employment and Housing Commission, *id*. § 12903 – to investigate, adjudicate, and redress discrimination claims, *id*. §§ 12930, 12935.  FEHA requires that an aggrieved claimant exhaust the administrative remedies provided by those bodies before filing an action in state or federal court.  *Id*. §§ 12960-12976." *Bass v. County of Butte*, 458 F.3d 978, 982 (9th Cir. 2006).

Plaintiff fails to allege facts demonstrating exhaustion of administrative remedies and therefore her complaint must be amended again. It is apparent that plaintiff filed a claim with DFEH, and that an investigation was conducted.[7] It is unclear, however, if and when plaintiff received her "right to sue" letter and, therefore, whether the instant action was timely filed. Accordingly, plaintiff must either describe in or attach to her Second Amended Complaint the papers she submitted to, and received from, the DFEH, as a prerequisite to pursuing both her FEHA and Title VII claims.

////

////

---

[7] The Amended Complaint expands upon the FEHA findings as follows:

> Personnel files of other plaintiff's fellow employees were reviewed, and it was determined that other employees performed poorly and unprofessional, performed sloppy work and that employees Fellows, Gagarin and Estrada performed poorly, had letters of admonition in their files, acted unprofessional but were not terminated for their offenses. New Kusnierz, Kathy Chester and Bill Hilton all were award of the other employees who were operated below standards. These documented incidents of scurrilous behavior effectively exposed and disproved defendants' claim that it is not aware of other comparable employees who performed at or below plaintiff's level but were not terminated. These same employees, Fellows, Gagarin, Estrada and Nicole Arana all conspired with Tweed Hanusek to have plaintiff terminated.
>
> . . . Tweed Hanusek, in his response to the DFHE's investigation . . . stated that plaintiff was terminated because she did not meet the performance expectations. DFHE's investigation determined that all of plaintiff's co-workers were essentially the same. They all made errors, so if plaintiff did not meet the performance expectation, neither did the other co-workers, including the ones promoted over plaintiff.
>
> When the defendants were being investigated by the DFHE, it was noted by the investigators that the employees they were interviewing were "coached" by the defendants attorneys. The employees even told the investigators that the attorneys coached them about what to say to the investigators concerning the investigation. The company attorney even shared personal and confidential information concerning the plaintiff with Gagarin, Estrada, Fellow and Arana, even the fact that plaintiff was being terminated. These [first] three employees knew about plaintiff's termination before plaintiff herself was informed about the termination.

Am. Compl. at 6.

9

### 2. CLAIMS PURSUANT TO TITLE VII and FEHA

Exhaustion of plaintiff's administrative remedies is also critical in assessing the scope of this court's review, as limited by the scope of plaintiff's administrative charge to DFEH and the agency's ensuing investigation.[8] Pursuant to Title VII, and the parallel provisions of FEHA, plaintiff makes claims of discrimination, hostile work environment, and retaliation on the basis of race and sex. As discussed supra, those claims, too, must be amended to make clear that they have been exhausted. The court notes, however, that it does not appear that plaintiff can amend to state a claim for discrimination based on sex, since the coworkers allegedly treated more favorably than plaintiff, and the individual hired to replace plaintiff, were also women. As for the other claims, it appears that plaintiff may be able to state a claim if she alleges facts sufficient to establish exhaustion.

"Title VII makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race [color, religion, sex, or national origin] . . . ." 42 U.S.C. § 2000e-2(a)(1) (2005). A person suffers disparate treatment in his employment when he or she is singled out and treated less favorably than others similarly situated on account of race [or sex]. To establish a *prima facie* case under Title VII, a plaintiff must offer proof: (1) that the plaintiff belongs to a class of persons protected by Title VII; (2) that the plaintiff performed his or her job satisfactorily; (3) that the plaintiff suffered an adverse employment action; and (4) that the plaintiff's employer treated the plaintiff differently than a similarly situated employee who does not belong to the same protected class as the plaintiff." *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018,

---

[8] "To establish federal subject matter jurisdiction, plaintiff is required to exhaust her EEOC administrative remedies before seeking federal adjudication of his claims. See *Sosa v. Hiraoka*, 920 F.2d 1451, 1456 (9th Cir.1990). The scope of the court action depends upon the scope of both the administrative charge and the administrative investigation. *Id*. Allegations of discrimination that are omitted in an administrative charge fall outside of a federal court's jurisdiction unless the new claims are like or reasonably related to the allegations contained in the charge. *Green v. Los Angeles Co. Superintendent of Schs.*, 883 F.2d 1472, 1475-76 (9th Cir.1989).

1028 (9th Cir. 2006) (citations and internal quotations omitted).

Plaintiff has set forth sufficient facts to state a Title VII claim of discrimination based on race. *See also* Cal. Govt. Code §§ 12940 *et seq*. (FEHA) (E.g., § 12940(a) ("It shall be unlawful . . . [f]or an employer, because of the race, [], color, national origin, ancestry . . . sex, [or] age . . .to discharge the person from employment or from a training program leading to employment, or to discriminate against the person in compensation or in terms, conditions, or privileges of employment")).

To establish a *prima facie* case for a Title VII claim of retaliation, plaintiff must show that she was: (1) engaged in a protected activity; (2) thereafter subjected by her employer to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action. *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 891 (9th Cir. 1994) (citing *Yartzoff v. Thomas,* 809 F.2d 1371, 1375 (9th Cir. 1987)). Plaintiff's allegations that (I) she was denied further training offered her white coworkers, after she complained that she had been excluded from an initial training session, and (ii) she was terminated in response to her complaints of discriminatory treatment, and a young white woman was hired to replace her, meet the requirements for stating a Title VII claim for retaliation based on race, both while plaintiff was employed, and based on her termination. *See also* Cal. Govt. Code §§ 12940 *et seq*. (FEHA) (E.g., § 12950(b)(7) (protection against retaliation for opposing prohibited practices)).

"Pursuant to a Title VII discriminatory discharge claim, the plaintiff must allege that she (I) was within the protected class; (ii) was doing her job well enough to rule out the possibility that she was fired for inadequate job performance; and (iii) her employer sought a replacement with qualifications similar to plaintiff's, thus demonstrating a continued need for the same services and skills." *Sengupta v. Morrison-Knudsen Co., Inc*., 804 F.2d 1072, 1075 (9th Cir. 1986) (citations omitted). Plaintiff has set forth sufficient facts to state a Title VII claim for discriminatory discharge based on race. *See also* Cal. Govt. Code §§ 12940 *et seq*. (FEHA).

////

Finally, plaintiff sets forth a prima facie Title VII claim for hostile work environment, based on her allegations that Hanusek created and maintained a climate of antipathy against plaintiff, isolating her from her coworkers, denying plaintiff access to meetings and training, refusing work that he had requested of plaintiff, and physically blocking her way. "In determining whether an actionable hostile work environment claim exists, we look to 'all the circumstances,' including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002) (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993)). "When the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' Title VII is violated." *Harris*, 510 U.S. at 21 (quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 65, 67 (1986)).

Moreover, plaintiff's hostile work environment claim is subject to a more complicated statute of limitations analysis due to the continuing violations issue. *See*, *e.g.*, *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002); *Douglas v. California Dept. of Youth Authority*, 271 F.3d 812, 822 (9th Cir. 2001); *Lelaind v. City and County of San Francisco*, 576 F.Supp.2d 1079, 1093 (N.D. Cal. 2008).

Further, plaintiff asserts in the title of her Amended Complaint that she is pursuing discrimination and retaliation claims under the California Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code §§ 12940, *et seq*., but fails to mention these claims in the body of the complaint. If plaintiff intends to pursue these claims, she must articulate them in any new amended complaint.

### D.  PLAINTIFF MAY STATE CLAIMS UNDER THE ADEA, 29 U.S.C. §§ 621, et seq.

Although the appropriate statute is not cited by plaintiff, her age discrimination claim is properly made pursuant to the Age Discrimination in Employment Act (ADEA), 29 U.S.C.

§§ 621, *et seq*. The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). This prohibition applies to "individuals who are at least 40 years of age," 29 U.S.C. § 631(a), and thus "the ADEA stands as a prohibition against unjustified maximum age limits for hiring," 14A C.J.S. *Civil Rights* § 272 (2007). "To establish a *prima facie* case of age discrimination through circumstantial evidence, the plaintiff must show that he was: (1) a member of a protected class [age 40 or older]; (2) performing his job in a satisfactory manner; (3) discharged; and (4) replaced by a substantially younger employee with equal or inferior qualifications." *Nidds v. Schindler Elevator Corporation*, 113 F.3d 912, 917 (9th Cir. 1996); *see also*, *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 891 (9th Cir. 1994).

If plaintiff intends to pursue her claim of discrimination based on age, she must set forth in an amended complaint the pertinent facts and state a prima facie claim that sets forth these elements. She has not done so in the current complaint.

### E. NO DAMAGES AGAINST INDIVIDUAL DEFENDANTS UNDER TITLE VII AND ADEA

Significantly, individual employees, including supervisory employees, cannot be held liable for damages under the ADEA or Title VII. *See Miller v. Maxwell's International, Inc.*, 991 F.2d 583, 587-588 (9th Cir. 1993). Although both of these acts define "employer" to include "any agent" of the employer (29 U.S.C. §§ 630(b), 203(d), 42 U.S.C. § 2000e(b) ), these provisions have been construed "to incorporate *respondeat superior* liability" rather than impose "employer liability" on the employee. *Miller*, 991F. 2d at 587. Thus, "civil liability for employment discrimination does not extend to individual agents of the employer who committed the violations, even if that agent is a supervisory employee." *Pink v. Modoc Indian Health Project, Inc*., 157 F.3d 1185, 1189 (9th Cir. 1998). Thus, only employer corporate defendant(s) may be liable for damages under Title VII and the ADEA. Any amended complaint may not

include individuals as defendants as to these claims.

### F. COMMON LAW CLAIMS

Plaintiff also asserts common law claims of slander (that Hanusek intended to harm plaintiff by stating that she did not meet company expectations, discussing her private information with plaintiff's coworkers, and placing plaintiff in a bad light, Am. Compl. at 11), false imprisonment ("Hanusek sat on plaintiff's desk, preventing her from leaving and verbally attacking her; saying things like 'he was told she didn't do any work,' while plaintiff's previous supervisor had just put her up for promotion," Am. Compl. at 11), and intentional infliction of emotional distress (plaintiff was denied her request to go home and check on her husband, who was ill,[9] although other employees were permitted to go home to sick children and there was not adverse response to another employee cussing out her supervisor).  Like plaintiff's statutory claims, these claims must be pled by setting forth the elements for each claim, and the pertinent facts which support these elements.

### CONCLUSION

For the foregoing reasons, several of plaintiff causes of action fail to state a claim and it is the recommendation of this court that plaintiff be granted leave to file a Second Amended Complaint.  That complaint must provide a threshold and separate section setting forth all pertinent facts, detailed and chronological, without reference to plaintiff's legal contentions.  Plaintiff's legal claims shall be set forth in a subsequent section, relying on the pertinent facts as needed, each claim set forth in separate subsection.  It is essential that plaintiff attach to her Second Amended Complaint the papers she submitted to, and received from, the Department of Fair Employment and Housing showing that she has exhausted her administrative remedies as to her statutory claims.  In addition, plaintiff must also carefully describe, and provide the address for, each institutional defendant, and provide the full name and title of each individual defendant.

---

[9] Plaintiff has elsewhere informed the court that her husband has chronic kidney failure.  See Dckt. Nos. 17, 18.

14

1  Plaintiff must state the location of her former employment.

2  Accordingly, IT IS HEREBY RECOMMENDED that:

3  1. Defendants' Motions to Dismiss, Dckt. Nos. 8 and 9, be granted in part, and denied in part as set forth above; and

5  2. Plaintiff's Amended Complaint, Dckt. No. 4, be dismissed with leave to file a second amended complaint, in conformance with the findings herein, within 60 days after the filing of any order adopting these recommendations.

8  These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within ten days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated:  November 13, 2009.

/s/ Edmund F. Brennan
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

15